1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EL CAJON LUXURY CARS, INC., dba Bob Baker Lexus, a California Corporation,<br><br>                                        Plaintiff,<br><br>    vs.<br><br>TOKIO MARINE & NICHIDO FIRE INSURANCE CO., LTD.,<br><br>                                        Defendant. | CASE NO. 11CV1248 JLS (MDD)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT**<br><br>(ECF No.7) |

Presently before the Court is Defendant Tokio Marine and Nichido Fire Insurance Co., Ltd.'s ("Defendant" or "Tokio Marine") motion to dismiss complaint. (Mot. to Dismiss, ECF No. 7)  Also before the Court is Plaintiff El Cajon Luxury Cars, Inc., dba Bob Baker Lexus's ("Plaintiff" or "Bob Barker Lexus") response in opposition, (Resp. in Opp'n. ECF No. 10), and Defendant's reply, (Reply in Supp., ECF No. 11).[1]  Having considered the parties' arguments and the law, the Court **GRANTS** Defendant's motion to dismiss.

## BACKGROUND

The present case arises out of the same unfortunate factual circumstances this Court summarized in its February 1, 2011 Order in the related case, *National Union Fire Insurance Co. v. Tokio Marine & Nichido Fire Insurance Co., Ltd.*, 2011 U.S. Dist. LEXIS 9555 (S.D. Cal. Feb.

---

[1] Because Defendant's reply is misnumbered in the copy on the case docket, all pincites in citations to this document refer to the page numbers assigned by CM/ECF.

1  1, 2011):

2        On August 28, 2009, a Lexus vehicle loaned to Mark Saylor by Bob Baker Lexus
         allegedly experienced sudden unintended acceleration, causing the vehicle to
3        crash and killing all four occupants.  Six months later, the heirs of the decedents
         filed a wrongful death complaint against Bob Baker Lexus and several Toyota
4        entities.

5        Out of this wrongful death suit, several relevant parties emerged—all of them
         insurance companies.  [National Union] insures Bob Baker Lexus.  [Tokio
6        Marine] issued several polices to Toyota Motor North America.  Hartford
         Casualty Insurance Company issued a policy to Bob Baker Lexus and is currently
7        defending the company in the underlying wrongful death action.

8  *Id.* at *1–2 (citations omitted).  Relevant here, the underlying action "includes allegations that Bob

9  Barker Lexus breached its duty of care . . . regarding the maintenance, care and servicing of the

10  vehicle."  (Compl. ¶ 11, ECF No. 1)

11       After the underlying action was filed, Plaintiff provided notice of the action to Defendant,

12  seeking defense and indemnification pursuant to the Tokio Marine insurance policies.  (*Id.* ¶ 21)

13  Although prior to the filing of the underlying action "a lawyer writing on behalf of Tokio Marine

14  stated, 'At this point there is no suit and therefore no duty to defend . . . We believe that Hartford

15  and Tokio Marine will have to share in the defense of Bob Baker Lexus in this matter if and when

16  suit is filed,'" (*Id.* ¶ 20 (ellipsis in original)),  "Tokio Marine declined coverage, including any

17  defense obligation," (*Id.* ¶ 22).  As a result, Plaintiff filed the instant complaint on June 7, 2011,

18  seeking declaratory relief regarding Defendant's duty to defend, and asserting claims of breach of

19  contract and breach of the implied covenant of good faith and fair dealing.  (Compl., ECF No. 1)

20       On July 5, 2011, Defendant filed a motion to dismiss Plaintiff's entire complaint pursuant

21  to Rule 12(b)(6).  (Mot to Dismiss, ECF No. 7).  Plaintiff filed an opposition on August 4, 2011,

22  (Resp. in Opp'n, ECF No. 10) and Defendant replied on August 11, 2011, (Reply in Supp., ECF

23  No. 11).  The hearing set for the motion to dismiss on October 27, 2011 was thereafter vacated,

24  and the matter was taken under submission on the papers.

25  //

26  //

27  //

28  //

1                                       **LEGAL STANDARD**

2          Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that

3   the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a

4   motion to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and

5   sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain

6   statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not

7   require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-

8   defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, — US — , 129 S. Ct. 1937, 1949

9   (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a

10  plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

11  labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

12  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a

13  complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*,

14  129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 557).

15         "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

16  accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550

17  U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible when the facts pled

18  "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct

19  alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  That is not to say that the claim must be

20  probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully."

21  *Id.*  Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to

22  relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).  Further, the Court need not accept as true "legal

23  conclusions" contained in the complaint. *Id.*  This review requires context-specific analysis

24  involving the Court's "judicial experience and common sense." *Id.* at 1950 (citation omitted).

25  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

26  misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to

27  relief.'" *Id.*  Moreover, "for a complaint to be dismissed because the allegations give rise to an

28  affirmative defense[,] the defense clearly must appear on the face of the pleading." *McCalden v.*

1  *Ca. Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990).

2       Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court

3  determines that the allegation of other facts consistent with the challenged pleading could not

4  possibly cure the deficiency.'"  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir.

5  1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.

6  1986)).  In other words, where leave to amend would be futile, the Court may deny leave to

7  amend.  *See Desoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.

8  **ANALYSIS**

9  **1.  The Insurance Policy**

10       The root of the parties' dispute is whether Bob Barker Lexus' insurance policy with Tokio

11  Marine, Policy Number CA859000404, covers the loss alleged in the underlying dispute.  The

12  relevant portions of the policy are reproduced here:

13      **SECTION II – LIABILITY COVERAGE**

14      **A.  Coverage**

15      [Tokio Marine] will pay all sums an "insured" legally must pay as damages
because of "bodily injury" to which this insurance applies, caused by an

16      "accident" and resulting from the ownership, maintenance or use of a covered
"auto".

17      . . .

18      [Tokio Marine] ha[s] the right and duty to defend any "insured" against a "suit"
asking for such damages . . . .  However, [Tokio Marine] ha[s] no duty to defend

19      any "insured" against a "suit" seeking damages for "bodily injury" or "property
damage" . . . to which this insurance does not apply.

20      . . .

21      **B.  Exclusions**

22      This insurance does not apply to any of the following:
    . . .

23

    **10.  Completed Operations**

24

    "Bodily injury" or "property damage" arising out of [Bob Baker Lexus'] work

25      after that work has been completed or abandoned.

26      In this exclusion, [Bob Baker Lexus'] work means:

27      a.  Work or operations performed by [Bob Baker Lexus] or on [Bob Baker
Lexus'] behalf; and

28

    b.  Materials, parts or equipment furnished in connection with such work or

1       operations.

2   (Ex. 2 at 23–25, ECF No. 1-2)

3        Plaintiff argues that the "plain language" of the policy "provides coverage for the

4   allegations in the underlying complaint (namely, there is . . . coverage for the negligent

5   maintenance allegations)." (Resp. in Opp'n 1–2, ECF No. 10) Tokio Marine contends, however,

6   that it has no duty to defend because "Bob Baker Lexus' alleged liability in the Underlying

7   Action . . . arises solely from the 'maintenance, care and servicing' of the subject vehicle,

8   which . . . fits squarely within the Completed Operations Exception." (Mot. to Dismiss 9, ECF No.

9   7)

10  **2.  California Insurance Law**

11       "While insurance contracts have special features, they are still contracts to which the

12  ordinary rules of contractual interpretation apply." *N. Am. Building Maint., Inc. v. Fireman's*

13  *Fund Ins. Co.*, 40 Cal. Rptr. 3d 468, 479 (Cal. Ct. App. 2006). A court must interpret a contract

14  "to give effect to the mutual intention of the parties as it existed at the time of contracting." Cal.

15  Civ. Code § 1636. For written contracts, "the intention of the parties is to be ascertained from the

16  writing alone, if possible." *Id.* § 1639; *see also Haynes v. Farmers Ins. Exch.*, 89 P.3d 381, 385

17  (Cal. 2004) (applying § 1639 to an insurance contract). The contract language, therefore,

18  determines its interpretation "if the language is clear and explicit." Cal. Civ. Code § 1638; *see*

19  *also Bank of the W. v. Superior Court*, 833 P.2d 545, 551 (Cal. 1992); *Blackhawk Corp. v. Gotham*

20  *Ins. Co.*, 63 Cal. Rptr. 2d 413, 418 (Cal. Ct. App. 1997) ("[W]here the language of a contract is

21  clear, we ascertain intent from the plain meaning of its terms and go no further."). The contract's

22  words "are to be understood in their ordinary and popular sense . . . unless used by the parties in a

23  technical sense, or unless a special meaning is given to them by usage." Cal. Civ. Code § 1644;

24  *see also MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1213 (Cal. 2003).

25       A policy provision in an insurance contract is truly ambiguous if the provision is capable of

26  two or more reasonable constructions. *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 627 (Cal.

27  1995); *ACS Sys., Inc. v. St. Paul Fire & Marine Ins. Co.*, 53 Cal. Rptr. 2d 786, 793 (Cal. Ct. App.

28  2007). To interpret an ambiguous policy provision, the Court must "give effect to the insured's

1  objectively reasonable expectations."  *Kavruck v. Blue Cross of Cal.*, 134 Cal. Rptr. 2d 152, 157

2  (Cal. Ct. App. 2003).  To determine whether coverage is warranted, "courts must focus on the

3  nature of the risk and the injury, in light of the policy provisions."  *Vandenberg v. Superior Court*,

4  982 P.2d 229, 245 (Cal. 1999); *see also Cont'l Cas. Co. v. Superior Court*, 111 Cal. Rptr. 2d 849,

5  862 (Cal. Ct. App. 2001).

6          In addition to these general policy interpretation principles, "[p]articular rules apply to the

7  interpretation of insurance policy exclusions."  *N. Am. Building Maint.*, 40 Cal. Rptr. 3d at 479.

8  "[A]n exclusion limits or takes back some of the insurance coverage granted by the insuring

9  clause."  *Essex Ins. Co. v. City of Bakersfield*, 65 Cal. Rptr. 3d 1, 10 (Cal. Ct. App. 2007).

10  "Therefore, 'exclusions serve to limit coverage granted by an insuring clause and thus apply only

11  to hazards *covered* by the insuring clause."  *Id.* (quoting *Old Republic Ins. Co. v. Superior Court.*,

12  77 Cal. Rptr. 2d 642, 652 (Cal. Ct. App. 1998)).  "[E]xclusionary clauses are strictly construed

13  against the insurer and in favor of the insured."  *N. Am. Building Maint.*, 40 Cal. Rptr. 3d at

14  479 (citation omitted).  Accordingly, "although the insured has the burden of proving the contract

15  of insurance and its terms, the insurer bears the burden of bringing itself within a policy's

16  exclusionary clauses."  *Id.* (citation omitted).

17          In deciding an insurance coverage dispute, "[t]he determination whether the insurer owes a

18  duty to defend is made in the first instance by comparing the allegations of the complaint with the

19  terms of the policy."  *Montrose Chem. Corp. v. Superior Court*, 861 P.2d 1153, 1157 (Cal. 1993)

20  (quoting *Horace Mann Ins. Co. v. Barbara B.*, 846 P.2d 792, 795 (Cal. 1993).  "[T]he insured need

21  only show that the underlying claim *may* fall within policy coverage; the insurer must prove it

22  *cannot*."  *Id.* at 1161.  "An insurer may rely on an exclusion to deny coverage only if it provides

23  *conclusive evidence* demonstrating that the exclusion applies."  *Atl. Mut. Ins. Co. v. J. Lamb, Inc.*,

24  123 Cal. Rptr. 2d 256, 272 (2002).

25  //

26  //

27  //

28  //

**3. Analysis**

Here, the Court finds that Plaintiff has met its initial burden of demonstrating that the underlying claim potentially falls within the scope of the insurance coverage.[2]  Plaintiff argues that "the plain language of the policies provide coverage for the allegations in the underlying complaint (namely, there is . . . coverage for the negligent maintenance allegations)."  (Resp. in Opp'n 2, ECF No. 10)  Indeed, the policy explicitly applies to any suit seeking damages due to bodily injury "caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'."  (Ex. 2 at 23, ECF No. 1-2)  The underlying action alleges that Bob Baker Lexus breached a duty of care "regarding the maintenance, care and servicing" of the vehicle involved in the accident.  (Ex. 1 at 4, ECF No. 1-1)  Given that the plain language of the policy covers "maintenance" and the claim in the underlying action arises out of the alleged negligent "maintenance" of the vehicle, it appears that the underlying action is unambiguously within the scope of the policy.

Determining that liability for the underlying action is within the scope of the coverage of the insurance policy is not the end of the inquiry, however.  An exclusion may apply to nevertheless limit the coverage available under the policy.  Here, Defendant argues exactly that: "The [Completed Operations] exclusion . . . exclude[s] coverage to Bob Baker Lexus for service and repair related liability, which is the sole basis of the alleged negligence in the Underlying Actions."  (Mot. to Dismiss 8, ECF No. 7)  In order to rely on this exclusion to deny that it has a duty to defend, however, Tokio Marine must provide conclusive evidence that the exclusion applies, *Atl. Mut. Ins. Co.*, 123 Cal. Rptr. 2d at 272, and the Court will strictly construe the exclusionary clause in favor of the insured, *N. Am. Building Maint.*, 40 Cal. Rptr. 3d at 479.

The Completed Operations exclusion in the Tokio Marine insurance policy is similar, if not identical, to standardized insurance policy exclusions several courts have previously analyzed.  Defendant relies primarily on one such case from the California Court of Appeals, *Baker v.*

---

[2] The parties contest whether Tokio Marine concedes that the plain language of the policy provides coverage for liability arising out of the maintenance of the vehicle involved in the underlying action. *Compare* (Resp. in Opp'n 4, ECF No. 10), *with* (Reply in Supp. 2, ECF No. 11).  Because the Court finds that Plaintiff has carried its burden to make a prima facie showing as to potential coverage, however, it in no way relies on any concession of coverage by Tokio Marine in its analysis.

1  *National Interstate Insurance Co.*, 103 Cal. Rptr. 3d 565 (Cal. Ct. App. 2010).  In *Baker*, the court

2  interpreted the following "products-completed operations hazard exclusion": "This insurance does

3  not apply to 'bodily injury' or 'property damage' . . . occurring away from premises you own or

4  rent and arising out of 'your product' or 'your work' except . . . [w]ork that has not yet been

5  completed or abandoned." *Id.* at 576.  Notably, this language is substantively similar to the Tokio

6  Marine policy at issue here, and the policies' definitions of "your work" and when that work is

7  deemed "completed" are identical.  *Compare id.* at 576–77, *with* (Ex. 2 at 25, ECF No. 1-2).  The

8  court in *Baker* determined that the language of the exclusion was unambiguous: "The language in

9  the policy before us today compels an interpretation that a claim arising from [the insured's]

10  "work," and occurring in the course of an accident off its premises, was not covered." *Baker*, 103

11  Cal. Rptr. 3d at 578.[3]

12        Similarly here, the Court finds that the "Completed Operations" exclusion in the Tokio

13  Marine policy is not ambiguous and must be interpreted in the same way *Baker* and other courts

14  have read similar exclusions.[4]  This means that claims arising out of Plaintiff's work—which

15  encompasses Plaintiff's service on the vehicle—after that work is completed are excluded from

16  coverage under the insurance policy.  The claim in the underlying action—that Bob Baker Lexus

17  breached its duty of care regarding the maintenance, care and servicing of the vehicle—plainly

18  falls within this exception.  Accordingly, the Court finds that coverage for the underlying claim,

19  while within the scope of the Tokio Marine policy, is excluded from the policy; thus, Defendant

20

21        [3] Specifically, the court in *Baker* held that the use of the disjunctive "or" in the policy
exclusion compelled the conclusion that a claim alleging injury arising from either the insured's work

22  *or* its product was excluded.  *Baker*, 103 Cal. Rptr. 3d at 578.  The Tokio Marine exclusion only
applies to claims of injury arising from the insured's work. (Ex. 2 at 25, ECF No. 1-2)  Because the

23  court in *Baker* read the product and work exclusions independently in light of the use of the
disjunctive "or," its interpretation of the "your work" provision provides guidance here.

24        [4] *Baker* cites to several cases interpreting substantively similar policy exclusions, including
*Flint v. Universal Mach. Co.*, 679 A.2d 929, 935 (Conn. 1996) ("A policy that contains an exclusion

25  for completed operations hazard conveys the parties' intention to limit the insurer's liability to
accidents occurring during the progress of the work and to exclude liability for accidents occurring,

26  after the work was completed, as the result of defective workmanship." (internal quotation marks and
alteration omitted)); *Boyer Metal Fab, Inc. v. Md. Cas. Co.*, 750 P.2d 1195, 1197 (Or. Ct. App. 1988)

27  (interpreting a similar policy exclusion and "find[ing] nothing ambiguous in the policy"); *Goodwin
v. Wright*, 6 P.3d 1, 9 (Wash. Ct. App. 2000) ("Nationally, as a general rule, a contract or operation

28  is deemed completed when the work contracted for or undertaken has been finished, and put to its
intended use." (internal quotation marks omitted)).

1  does not owe a duty to defend the underlying action.

2       To the extent that Plaintiff argues that "[e]ven if . . . the completed operations exclusion

3  applies in this case, [some other] theory of liability would not fall within the exclusion," the Court

4  finds this argument unavailing.  (Resp. in Opp'n 8, ECF No. 10)  The only alternative theories

5  articulated by Plaintiff—though not pleaded in the underlying complaint—include a failure to

6  investigate reported vehicle problems and replacing the vehicle's floor mats with allegedly ill-

7  fitting mats, which purportedly contributed to the accident.  (*Id.*)  Either of these theories falls

8  within Plaintiff's "work" on the vehicle, in that it is still based on the negligent "maintenance, care

9  and service of the vehicle," and as such falls within the exclusion.

10  **4. Conclusion**

11       The Tokio Marine insurance policy exclusion denies coverage for the underlying claim,

12  and therefore Plaintiff's first claim for declaratory relief is **DISMISSED**.  Because the Court finds

13  that Defendant did not owe a duty to defend, Plaintiff's claims for breach of contract and breach of

14  the implied covenant of good faith and fair dealing are likewise **DISMISSED**.

15                              **CONCLUSION**

16       For the reasons stated above, Defendant's motion to dismiss Plaintiff's complaint is

17  **GRANTED**.  In light of Plaintiff's contention that there are "a number of factual theories

18  developed in the Underlying Action that either trigger coverage or have the potential for triggering

19  coverage," (Resp. in Opp'n 8, ECF No. 10), the Court **DISMISSES** the complaint **WITHOUT**

20  **PREJUDICE**.  Plaintiff shall have 14 days from the electronic filing of this order to file an

21  amended complaint.

22       **IT IS SO ORDERED.**

23  DATED:  November 8, 2011

24                              *Janis L. Sammartino*
                                Honorable Janis L. Sammartino
25                              United States District Judge

26

27

28