1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

EL CAJON LUXURY CARS DBA
BOB BAKER LEXUS,

                                    Plaintiff,

    vs.


TOKIO MARINE & NICHIDO FIRE
INSURANCE COMPANY,

                                    Defendant.

CASE NO. 11CV1248 JLS (DHB)

**ORDER (1) GRANTING MOTION
FOR RECONSIDERATION; (2)
DISMISSING PLAINTIFF'S
SECOND AMENDED COMPLAINT
WITHOUT PREJUDICE; AND (3)
STAYING CASE**

(ECF No. 36)

Presently before the Court is Tokio Marine & Nichido Fire Insurance Co., Ltd.'s ("Defendant," or "Tokio Marine") Motion for Reconsideration, Request for Clarification, and Request for Certification for Interlocutory Appeal. (ECF No. 36). Also before the Court is Plaintiff El Cajon Luxury Cars d/b/a Bob Baker Lexus's ("Plaintiff," or "Bob Baker Lexus") response in opposition, (Resp. in Opp'n, ECF No. 41), and Tokio Marine's reply in support, (Reply in Supp., ECF No. 42).

Tokio Marine moves for this Court to reconsider its September 10, 2012 Order denying Tokio Marine's motion to dismiss Bob Baker Lexus's Second Amended Complaint ("SAC"). Having considered the parties' arguments and the law, the Court **GRANTS** Tokio Marine's motion for reconsideration, **DISMISSES** Plaintiff's SAC **WITHOUT PREJUDICE**, and **STAYS** this case pending the resolution of the underlying state court suit against Bob Baker Lexus.

**BACKGROUND**

This Order incorporates by reference the factual and procedural history articulated in the Court's prior orders. (*See* Order, Sept. 10, 2012, ECF No. 31; Order, Mar. 6, 2012, ECF No. 22; Order, Nov. 8, 2011, ECF No. 13). Tokio Marine filed an answer to the SAC on September 21, 2012, (ECF No. 32), and then proceeded to file the current motion for reconsideration on October 11, 2012, (ECF No. 36). Plaintiff filed its response in opposition on November 8, 2012, (Resp. in Opp'n, ECF No. 41), and Tokio Marine filed a reply in support on November 15, 2012, (Reply in Supp., ECF No. 42). The motion hearing, originally set for November 29, 2012, was reset for January 3, 2013. (Order, Nov. 15, 2012, ECF No. 43).

On December 17, 2012, the parties filed a joint motion requesting that this action be temporarily stayed until April 1, 2013 to facilitate ongoing settlement discussions. (Jt. Mot. to Stay, ECF No. 46). The Court granted the motion to stay and continued the hearing on the motion for reconsideration. (Order, Dec. 20, 2012, ECF No. 47). As the parties did not file a notice of settlement, the Court held a hearing on the motion for reconsideration on June 6, 2013.

**STANDARD OF REVIEW**

In the Southern District of California, motions for reconsideration are governed by Local Rule 7.1(i). *See Gallagher v. San Diego Unified Port Dist.*, 2011 U.S. Dist. LEXIS 100861, at *2 (S.D. Cal. Sept. 8, 2011). Local Rule 7.1(i)(1) allows a party to apply for reconsideration "[w]henever any motion or any application or petition for any order or other relief has been made to any judge and has been refused in whole or in part." Civ LR 7.1(i)(1).

Whether to grant or deny a motion for reconsideration is in the sound discretion of the district court. *Navajo Nation v. Norris*, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000)). Generally, a reconsideration of a prior order is "appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial

1   decision was manifestly unjust, or (3) if there is an intervening change in controlling

2   law." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citation

3   omitted).  "Newly discovered evidence" is evidence that was in existence at the time of

4   trial but (1) "was discovered after trial"; (2) could not have been discovered at an earlier

5   stage by the "exercise of due diligence"; and (3) "is of such magnitude that production

6   of it earlier would likely have changed the outcome of the case." *Far Out Prods., Inc.*

7   *v. Oskar*, 247 F.3d 986, 992–93 (9th Cir. 2001) (quoting *Defenders of Wildlife v.*

8   *Bernal*, 204 F.3d 920, 929 (9th Cir. 1999)).

9                                              **DISCUSSION**

10      In its September 10, 2012 Order, this Court determined that Bob Baker

11   Lexus's cause of action for breach of an insurer's duty to defend should survive

12   because Tokio Marine's insurance policy might cover Bob Baker Lexus's liability in

13   an underlying wrongful death lawsuit arising from a fatal accident involving one of

14   the dealership's loaner vehicles.  (Order, Sept. 10, 2012, ECF No. 31).  Plaintiff's

15   SAC alleges that extrinsic facts support a negligence claim against Bob Baker Lexus

16   based on a receptionist's failure to document a customer complaint regarding an

17   unintended acceleration event in the vehicle that was involved in the accident.

18   (SAC, ECF No. 23).

19      The Court agreed with Plaintiff that such a negligence claim, if alleged, would

20   not fall within the policy's "Completed Operations" exclusion.  (Order, Sept. 10,

21   2012, ECF No. 31).  The Court concluded that this provision, which excludes

22   coverage for liability arising out of "work or operations" performed by, or on behalf

23   of, the dealership, refers to "the work performed in the service or maintenance of

24   [loaner] vehicles, and not [to] a receptionist's work in tracking customer complaints

25   on loaner vehicles." (*Id.*)  The Court's reasoning relied, in part, on Bob Baker

26   Lexus's practice of providing loaner vehicles to its customers free of charge:

27   "Nothing in the SAC suggests that customers are required to pay for Bob Baker

28   Lexus's loaner car services; indeed, a more reasonable inference is that this service

1    is provided as a 'courtesy' to customers who leave their personal vehicles with Bob

2    Baker Lexus for maintenance services." (*Id.*)

3         Tokio Marine now contends that the Court's prior ruling should be modified

4    because (1) documents not previously presented to the Court indicate that customers

5    receiving a loaner vehicle from Bob Baker Lexus must pay for mileage, fuel, and

6    other incidental expenses associated with use of the vehicle; and, (2) the Court's

7    interpretation of the "Completed Operations" exclusion is flawed because it departs

8    from the plain meaning of the term "work." The Court addresses each argument in

9    turn.

10   **1. New Evidence Regarding Charges Associated with Bob Baker Lexus's**

11   **Loaner Car Services**

12        Tokio Marine submits as purportedly new evidence selected portions of Bob

13   Baker Lexus's standard Rental Agreement, (Salem Decl., Ex. B, ECF No. 36-3),

14   and the Lexus Customer Convenience System ("LCCS") Manual, (Salem Decl, Ex.

15   C, ECF No. 36-4).[1] Tokio Marine argues that these documents show that customers

16   must pay for various expenses associated with Bob Baker Lexus's loaner vehicle

17   service. For example, the Rental Agreement indicates that customers using loaner

18   vehicles must pay, among other fees, (1) time and mileage charges; (2) basic or

19   minimum rate, service, and other charges; (3) refueling charges, if the vehicle is

20   returned with less fuel than when rented; (4) applicable taxes; and, (5) toll, parking,

21   and traffic fines or citations. (Salem Decl., Ex. B, at 3, ECF No. 36-3).[2] The Rental

22   Agreement also requires customers using loaner vehicles to authorize Bob Baker

23   Lexus to "process a credit card voucher in [their] name for payments due under [the]

24   Agreement." (*Id.*)

25        In addition, the LCCS Manual sets forth basic features and advantages of the

26   _____

27   [1] The first page of the Rental Agreement was previously submitted to the Court, (Mot. to Dismiss SAC, Ex. C, Part 2, ECF No. 26-4), along with other portions of the LCCS Manual, (SAC, Ex. 3, ECF No. 23-1).

28   [2] Pincites to exhibits utilize the page numbers assigned by CM/ECF.

1   loaner vehicle program and provides guidelines as to how the dealership should

2   manage its loaner vehicle fleet.  Tokio Marine cites the LCCS Manual as evidence

3   that Bob Baker Lexus's loaner vehicle program is an integral part of the dealership's

4   for-profit business, rather than a charitable side venture.  For example, the LCCS

5   Manual indicates that dealerships should provide loaner vehicles exclusively to

6   customers and that dealerships can expect to enjoy several benefits from offering

7   this service, such as "increased customer loyalty and owner retention" and

8   opportunities to re-sell loaner vehicles at attractive prices.  (Salem Decl., Ex. C, at 6,

9   ECF No. 36-4).

10      Tokio Marine argues that the Rental Agreement and the LCCS Manual

11   undermine the Court's premise that Bob Baker Lexus provides loaner vehicles

12   exclusively as a courtesy, with no apparent view to its own benefit.  Tokio Marine

13   contends that if "the Court feels payment for the loaners affects interpretation of

14   'work or operations' within the ['Completed Operations'] exclusion[,] [then] the

15   tasks performed by the receptionist in tracking customer complaints [are] clearly

16   within the 'work or operations' of Bob Baker Lexus."  (Mot. for Reconsideration 6,

17   ECF No. 36).

18      The Court remains skeptical, however, that Tokio Marine's allegedly new

19   evidence could not have been presented at an earlier point in this litigation.  *Baker v.*

20   *National Interstate Insurance Co.* indicates that whether a service is performed in

21   exchange for payment is, at the very least, relevant in determining whether that

22   activity constitutes "work" for purposes of the "Completed Operations" exclusion.

23   103 Cal. Rptr. 3d 565, 581 (Cal. Ct. App. 2010) ("We are confident that the common

24   understanding of 'work' includes a person's services performed in return for

25   payment of money.").  Thus, it makes little sense for Tokio Marine to suggest that

26   the Court raised this issue on its own, without notice or warning to the parties.

27      Moreover, the documents presented by Tokio Marine do not, by themselves,

28   suggest that the Court's analysis is flawed.  At most, the documents indicate that

1   Bob Baker Lexus requires its customers to pay for certain incidental expenses

2   incurred in using a loaner vehicle, such as the cost of fuel or parking citations.[3]

3   (Salem Decl., Ex. B, at 3, ECF No. 36-3).  Accordingly, the Court declines to

4   modify its prior ruling on this basis.

5   **2. The Court's Prior Interpretation of the "Completed Operations" Exclusion**

6         Tokio Marine further contends that the Court's prior order erred in departing

7   from *Baker*'s interpretation of the term "work."  According to Tokio Marine, the

8   Court assigned excessive importance to whether a specific fee is charged in

9   exchange for a service in determining what constitutes "work" for purposes of the

10  "Completed Operations" exclusion.  Tokio Marine maintains that the task of a Bob

11  Baker Lexus receptionist in tracking customer complaints on loaner vehicles

12  constitutes "work" under any ordinary, or common, construction of that term,

13  regardless of whether the dealership charges a specific fee for loaner vehicles.

14        Upon reconsideration, the Court agrees with Tokio Marine.  *Baker* indicates

15  that the term "work" should be construed in accord with its ordinary, or

16  commonsense, meaning, and should not take on a more limited signification based

17  on the insured's business model.  *See Baker*, 103 Cal. Rptr. at 581 (applying the

18  "common understanding" and "ordinary and popular meaning" of the term "work.").

19  This interpretation honors the reasonable expectations of policyholders because

20  "[t]he best indicator of an insured's reasonable expectation of coverage is . . . the

21  language of the insurance policy."  *Spangle v. Farmers Ins. Exch.*, 82 Cal. Rptr. 3d

22  763, 770 (Cal. Ct. App. 2008); *see also Baker*, 103 Cal. Rptr. at 581 ("Although

23  exclusions are generally viewed through a more critical prism, the principle that

24  words are considered in their 'ordinary and popular sense' is not discarded . . . .").

25        One common definition of work—applied by the court in *Baker*—is "the

26

27        [3] Indeed, the portions of the LCCS Manual submitted by Tokio Marine confirm
28  that the "goal" of Lexus's loaner vehicle program is to "[s]upport Lexus'[s] commitment to customer satisfaction by providing *no-charge* service loaner vehicles . . . ."  (Salem Decl., Ex. C, at 6, ECF No. 36-4) (emphasis added).

labor, task, or duty that is one's accustomed means of livelihood."
*Merriam–Webster's Collegiate Dictionary* 1442 (11th ed. 2007).  In its briefing,
Tokio Marine suggests another common definition, drawn from the same dictionary:
"[T]o carry on an operation or perform a job . . . ."  *Id.* at 1443.  Black's Law
Dictionary provides a third, more generic, definition:  "Physical and mental exertion
to attain an end, esp. as controlled by and for the benefit of an employer; labor."
*Black's Law Dictionary* 494 (9th ed. 2009).  The insurance policy does not indicate
that the term "work" is intended to bear a more technical or specialized sense than
these definitions provide.

Here, applying any of these definitions, a Bob Baker Lexus receptionist
tracking customer complaints on loaner vehicles is engaged in "work," regardless of
whether customers pay a specific fee to use the vehicles.  The receptionist is
performing her job and is engaged in activity that is controlled by, and benefits, the
dealership.  As Tokio Marine argues, it is simply inconsistent with ordinary usage to
find that a receptionist is performing her job and carrying on the business of her
employer, but is not engaging in "work."

Moreover, this approach is more consistent with the Court's earlier holding
that allegations of "negligent maintenance" fall within the "Completed Operations"
exclusion and are not covered by the policy.  (*See* Order, Nov. 8, 2011, ECF No.
13).  Under the Court's previous interpretation, a Bob Baker Lexus mechanic
performing repairs on a courtesy, no-charge loaner vehicle might not be engaged in
"work," such that a claim for negligent maintenance against the dealership would
trigger coverage under the policy.  Under a plain meaning approach, however, a
mechanic servicing a loaner vehicle and a receptionist documenting a customer
complaint regarding that vehicle are both engaged in "work" because they are both
performing "the labor . . . that is [their] . . . means of livelihood."
*Merriam–Webster's Collegiate Dictionary* 1442 (11th ed. 2007).

Bob Baker Lexus contends that Tokio Marine's proposed interpretation is

1   misguided because it would preclude coverage not only for liability arising from

2   vehicle maintenance, but also for liability arising from vehicle "ownership," thereby

3   undermining the policy's guarantee of coverage for accidents resulting from the

4   ownership, maintenance, or use of a covered vehicle.  (Resp. in Opp'n 5–6, ECF No.

5   41).  Bob Baker Lexus maintains that interpreting the "Completed Operations"

6   exclusion to preclude coverage for liability arising from any completed act or

7   omission by the dealership conflicts with the rule that coverage exclusions must be

8   narrowly construed.  (*Id.*)

9          Yet this interpretation is consistent with a reasonable policyholder's

10  expectations and does not eliminate coverage under the policy.  Tokio Marine's

11  policy would continue to cover Bob Baker Lexus for liability arising from

12  customers' and employees' use of loaner vehicles.[4]

13         Accordingly, the Court **GRANTS** Tokio Marine's motion for reconsideration.

14  Nonetheless, the Court **DISMISSES** Plaintiff's SAC **WITHOUT PREJUDICE** in

15  case an unanticipated theory of liability that might be covered by the policy arises in

16  the course of the underlying proceedings.  The Court **STAYS** this matter until the

17  record in the underlying wrongful death suit is complete.

18                                **CONCLUSION**

19         For the reasons stated above, the Court **GRANTS** Tokio Marine's motion for

20  reconsideration, **DISMISSES** Plaintiff's SAC **WITHOUT PREJUDICE**, and

21  ///

22  ///

23  ///

24  ///

25  ///

26  

27         [4] A dealership employee driving a loaner vehicle would typically be engaged in
    an ongoing operation.  Accordingly, liability arising from an employee's use of a loaner
28  vehicle probably would not fall within the "Completed Operations" exclusion.  (June
    6, 2013 Hearing Tr. 8–9, ECF No. 53).

**STAYS** this case pending resolution of the underlying state court action.  The parties shall move to lift the stay in this matter once the record in the underlying suit is complete.

      **IT IS SO ORDERED.**

DATED:  July 1, 2013

                              _Janis L. Sammartino_
                              Honorable Janis L. Sammartino
                              United States District Judge